**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Bilal Haidari, Yamen Haidari, And Zahi Haidari,<br><br>    Plaintiffs,<br><br>v.<br><br>Denise Frazier, District Director, U.S. Citizenship & Immigration Services; Eduardo Aguirre, Director, U.S. Citizenship & Immigration Services; Alberto Gonzales, Attorney General of the United States; and Michael Chertoff, Secretary, U.S. Department of Homeland Security,<br><br>    Defendants. | Civil No. 06-3215 (DWF/AJB)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Herbert A. Igbanugo, Esq., Igbanugo Partners Int'l Law Firm, PLLC, counsel for Plaintiffs.

Mary J. Madigan, Assistant United States Attorney, United States Attorney's Office, counsel for Defendants.

**INTRODUCTION**

Plaintiffs initiated this suit seeking a writ of mandamus directing the United States Citizenship and Immigration Services ("USCIS") to adjudicate the Plaintiffs' pending I-485 change of status applications. This matter is currently before the Court on

Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1]  For the reasons stated below, the Court denies Defendants' motion and remands to the USCIS for expedited resolution.

## BACKGROUND

Plaintiffs Bilal, Yamen, and Zahi Haidari are of Palestinian descent.  The USCIS granted Plaintiffs asylum on April 26, 1999, October 18, 1999, and December 28, 2000, respectively.  Then, on January 6, 2000, October 20, 2000, and February 13, 2002, Bilal, Yamen, and Zahi respectively filed their Form I-485 applications with the Nebraska Service Center, pursuant to 8 C.F.R. § 209.2, in order to become lawful permanent residents of the United States.

When an applicant applies to USCIS for permanent residence, USCIS conducts several security and background checks to ensure that the person is both eligible for permanent residence and is not a national security or public safety risk.  These background checks include:  (a) a record check made against DHS's own immigration systems; (b) an FBI fingerprint check; (c) a check against the Interagency Border Inspection System (IBIS); and (d) an FBI name check, which is run against FBI investigative databases.  USCIS's policy requires that an adjudications officer cannot complete a Form I-485 adjudication until all of the above background security checks are

---

[1] Plaintiffs filed a Motion for Default Judgment on October 11, 2006 (Doc. No. 3). Because Plaintiffs voluntarily withdrew their Motion for Default Judgment in their Reply to Defendants' Response to Motion for Default Judgment and Renewed Opposition to Defendants' Motion to Dismiss (Doc. No. 19), the Court need not address it.

completed. Currently, the Nebraska Service Center is adjudicating Form I-485 applications based on asylum grants that were filed on or before August 8, 2003.

*Bilal Haidari*:

The USCIS has taken the following course of action on Bilal's January 2000 application:

- On January 15, 2003, the USCIS requested that the FBI conduct Bilal's name check.

- On March 31, 2004, the USCIS took Bilal's fingerprints and submitted them to the FBI.

- On April 1, 2004, the FBI provided a response to the fingerprint check, which indicated that Bilal had been arrested for evasion of reporting requirements related to the export of monetary instruments. On February 7, 2005, this charge was dismissed.

- The first fingerprint clearance for Bilal expired on July 1, 2005.[2]

- In March 2006, an adjudications officer for the USCIS interviewed Bilal on his Form I-485.

- On August 30, 2006, the USCIS requested an update of Bilal's fingerprint check.

- On September 1, 2006, the FBI provided an updated report and provided fingerprint clearance.

- On October 10, 2006, the USCIS requested that the FBI expedite its processing of the name check.

*Yamen Haidari*:

The USCIS has taken the following course of action on Yamen's October 2000 application:

- On or around December 18, 2002, the USCIS requested that the FBI conduct Yamen's name check.

---

[2] For Form I-485 applicants, FBI fingerprint reports are valid for 15 months.

- On September 10, 2003, Yamen's name check was completed.

- On April 23, 2005, the USCIS took Yamen's fingerprints and submitted them to the FBI.

- On March 23, 2006, the FBI provided a response to the fingerprint check, which indicated that Yamen had been arrested for evasion of reporting requirements related to the export of monetary instruments.  This charge was dismissed.

- In February 2006, the USCIS issued Yamen a Fingerprint Notification for him to have his fingerprints retaken.

- On May 11, 2006, the USCIS requested that the FBI conduct a second name check on Yamen.

- On March 15, 2006, an adjudications officer for the USCIS interviewed Yamen on his Form I-485.

   *Zahi Haidari*:

   The USCIS has taken the following course of action on Zahi's February 2002

application:

- On June 10, 2003, the USCIS requested that the FBI conduct a name check on Zahi.

- On approximately September 20, 2005, the USCIS took Zahi's fingerprints and submitted them to the FBI.

- In November 2005, the FBI provided a response to the fingerprint check, which indicated that Zahi had been arrested for 5th Degree Assault on July 23, 2002.  Zahi was convicted of that crime and was sentenced to 30 days and a $340 fine on October 15, 2002.

- On March 15, 2006, an adjudications officer for USCIS interviewed Zahi on his Form I-485.

- On August 30, 2006, USCIS requested that the FBI expedite its processing of the name check.

**PROCEDURAL HISTORY**

Plaintiffs filed a Complaint for a Writ in the Nature of Mandamus on August 3, 2006. In the Complaint, Plaintiffs assert jurisdiction under 28 U.S.C. § 1361 (mandamus statute); 28 U.S.C. § 2201 (Declaratory Judgment Act); 28 U.S.C. § 1331 (federal question); 5 U.S.C. § 701, *et seq.*; and 5 U.S.C. § 551, *et seq.* (Administrative Procedure Act). Defendants then filed a Motion to Dismiss, claiming lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

In its motion papers, filed October 11, 2006, Defendants assert that the USCIS is unable to adjudicate Plaintiffs' Form I-485 applications because the FBI had not reported a final resolution of their background security checks to the USCIS. At the December 1, 2006 oral argument, counsel represented that the FBI background checks on Zahi and Yamen continue to remain pending with the FBI. But the record reflects that this is no longer true as to Bilal. In a November 6, 2006 letter, a representative from United States Senator Mark Dayton's office indicates that the FBI name check on Bilal was completed on October 13, 2006, and forwarded to the USCIS headquarters in Washington, D.C. Yet, as of December 1, the USCIS has not adjudicated Bilal's application.

**DISCUSSION**

**I.  Standard of Review**

"Dismissal for lack of subject matter jurisdiction will not be granted lightly." *Wheeler v. St. Louis Southwestern Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996). Dismissal is proper, however, where an attack on the complaint's alleged basis for subject matter jurisdiction reveals that there is no actual basis for jurisdiction. *Id*.

When the legal sufficiency of the plaintiff's jurisdictional allegations are at issue, the court must take all facts alleged in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Also, the court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1). *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003). Consideration of matters outside the pleadings under such circumstances does not convert the proceedings to a Rule 56 summary judgment motion. *Id.*

## II.    Subject Matter Jurisdiction

Federal subject matter jurisdiction is proper only if Congress has expressly conferred it. *State of Mo. ex rel. Mo. Hwy. & Transp. Comm'n v. Cuffley*, 112 F.3d 1332, 1334 (8th Cir. 1997). Congress has deemed that federal courts have jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Here, in addition to asserting federal question jurisdiction under § 1331, Plaintiffs assert that this Court has jurisdiction based on the mandamus statute, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedures Act (APA), 5 U.S.C. §§ 701 *et seq.* and 551 *et seq.*[3]

---

[3]    The Declaratory Judgment Act is not a jurisdictional statute, but is instead a procedural one. The Act does not provide an independent basis for subject matter jurisdiction. *Skelly Oil v. Phillips Petro. Co.*, 339 U.S. 667, 671-72 (1950); *Larson v. United States*, 995 F. Supp. 969, 971 (D. Minn. 1997).

### A. Mandamus and the APA

The mandamus statute grants federal district courts "jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is an extraordinary remedy. *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). In order to be eligible for mandamus relief, (1) the plaintiff's claim must have a clear and indisputable right to the relief he sought; (2) the defendant must have a non-discretionary duty to honor the right; and (3) there must be a lack of an alternative, adequate remedy. *See Castillo v. Ridge*, 445 F.3d 1057, 1060 (8th Cir. 2006). If these elements are not met, the mandamus statute will not provide subject matter jurisdiction. *See id.* at 1061; *see also Chaudry v. Chertoff*, No. 06-1303 (PAM/JSM), 2006 WL 2670051, at *2 (D. Minn. Sept. 18, 2006). Whether a writ of mandamus should issue is in large part a matter of discretion with the district court. *Kerr v. United States District Court*, 426 U.S. 394, 403 (1976); *Castillo*, 445 F.3d at 1061.

Plaintiffs argue that they do have mandamus jurisdiction because their right to relief, and Defendants' non-discretionary duty to honor that duty are in the APA. Plaintiffs further argue that they have exhausted their efforts with the USCIS and that the only remedy available to them at this point is through order of this Court. This Court agrees.

### i. Right to relief

After being granted asylum, Plaintiffs filed their I-485 applications pursuant to 8 C.F.R. § 209.2. Section 209.2 provides:

> The applicant shall be notified of the decision, and if the application is denied, of the reasons for denial . . . . If the application is approved, the director shall record the alien's admission for lawful permanent residence as of the date one year before the date of the approval of the application . . . .

8 C.F.R. § 209.2 (f). The Court finds that this language creates a non-discretionary duty to adjudicate the Plaintiffs' applications. *See Aboushaban v. Mueller*, No. C 06-1280 BZ, 2006 WL 3041086, at *1-2 (N.D. Cal. Oct. 24, 2006) (citing *Yu v. Brown*, 36 F. Supp. 2d 922, 931-32 (D.N.M. 1999) (holding that similar language established that the INS owed plaintiff a duty to process her application); *Dabone v. Thornburgh*, 734 F. Supp. 195, 200 (E.D. Pa. 1990) (holding that similar language established that the Board of Immigration Appeals owed plaintiff a duty to adjudicate his motion); *see also Am. Academy of Religion v. Chertoff*, No. 06 Civ. 588 (PAC), 2006 WL 1751254, at *16 (S.D.N.Y. June 23, 2006) (holding that the language stating that officials were to either "issue or refuse" a completed visa creates a duty to adjudicate)).

In addition, while 8 C.F.R. § 209.2 does not provide for a timeliness requirement in regard to the government's duty to adjudicate applications, the Court finds that the APA does. Section 555(b) of the APA, which was properly plead by Plaintiffs in their Complaint, requires that "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to

conclude a matter presented to it." 5 U.S.C. § 555(b).[4] Therefore, the Plaintiffs correctly assert that they have a right to have the USCIS adjudicate their applications within a reasonable time. *See Aboushaban*, 2006 WL 3041086, at *2 (citing *Yu*, 36 F. Supp. 2d at 928-31 (applying the APA's reasonable requirement to similar regulatory provisions); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 391-92 (S.D.N.Y. 2004) (same)).[5]

### ii. Non-discretionary duty

Defendants argue that mandamus jurisdiction must fail because their decision of whether to grant or deny an adjustment application is wholly discretionary; "adjustment of status is a matter of grace, not right." *Elkins v. Moreno*, 435 U.S. 647, 667 (1978). Further, Defendants assert that Plaintiffs' mandamus action is barred following INA § 242(a)(2)(B)(I). Specifically, Defendants reason that because § 242 bars judicial

---

[4] This provision is also referred to as "section 6 of the APA."

[5] Several courts have found that alleging a violation of section 555(b) of the APA brings the action within federal question jurisdiction as long as the claim is not "wholly insubstantial and frivolous" or "patently without merit." *Kim*, 340 F. Supp. 2d at 391; *Bartolini v. Ashcroft*, 226 F. Supp. 2d 350, 353-54 (D. Conn. 2002) (finding that plaintiffs' claim "cannot be said to be patently without merit" and concluding that "subject matter jurisdiction exists based on 28 U.S.C. § 1331 in conjunction with 5 U.S.C. § 555(b)"); *Cordoba v. McElroy*, 78 F. Supp. 2d 240, 244 (S.D.N.Y. 2000) (quoting *Bell v. Hood*, 327 U.S. 678, 682-84 (1946), and later stating, "As it is not now clear that plaintiffs cannot establish the existence of a substantial claim of violation of Section 6, the Court is not now prepared to dismiss for want of jurisdiction[.]"); *see also Batista v. INS*, No. 99 Civ. 2847, 2000 WL 204535, at *4 (S.D.N.Y. Feb. 22, 2000) ("Although [Batista's] claim is meritless . . . it is not 'patently' so. Accordingly, I will exercise § 1331 jurisdiction over plaintiffs' § 555(b) claim and treat it on the merits."). Here, Plaintiffs claim a right to have the USCIS adjudicate their applications within a reasonable time, as required by § 555(b) of the APA. They assert that the six-year and four-year delays from the time their applications were submitted are unreasonable. Because this claim is not patently without merit in light of the record before this Court, this Court does have subject matter jurisdiction.

9

review of the denial of an adjudicated adjustment application, the provision should also be read to bar review of any alleged delays in processing the applications.

Defendants are correct in that the decision of whether to *grant* or *deny* an adjustment application is discretionary. But Plaintiffs are not requesting that this Court review a denial, nor are they seeking to compel Defendants to grant their applications. Instead, Plaintiffs are only asking this Court to compel Defendants to make *any* decision. Because Plaintiffs have neither been denied nor granted relief, § 242 does not bar jurisdiction. *See Paunescu v. INS*, 76 F. Supp. 2d 896, 900 (N.D. Ill. 1999) (finding that because plaintiffs had neither been denied nor granted relief, a similar statute regarding removal did not bar jurisdiction). And "[w]hether to *adjudicate* an adjustment application is not discretionary, but governed by section 6 of the APA, requiring the [US]CIS to take action on a matter presented to it 'within a reasonable time.'" *Kim*, 340 F. Supp. 2d at 389 (emphasis in original).

### iii.     Lack of an alternative, adequate remedy

Defendants assert that the Court lacks jurisdiction because Plaintiffs have not exhausted their available administrative remedies. According to Defendants, Plaintiffs have not received decisions on their applications because the FBI background checks have not been completed.[6] Therefore, Defendants contend that Plaintiffs' adequate remedy is waiting until their applications are adjudicated.

---

[6]     This assertion is now directly contradicted in the record as it pertains to Bilal. Senator Dayton's office has indicated through letter communication that the FBI name check on Bilal was completed on October 13, 2006.

Defendants miss the point. The question is whether the Plaintiffs have adequate, alternative means to address this very issue: the fact that they are still waiting. Plaintiffs have made extensive efforts through communications with the USCIS and others to try to speed up the process. And because Plaintiffs are currently lingering in asylee status, there is no adequate remedy at this juncture other than to request the Court's help.

Because Plaintiffs have a clear right to have their applications adjudicated, Defendants have a non-discretionary duty to perform this adjudication within a reasonable time, and no other remedy is available to the Plaintiffs, the Court concludes that it has mandamus jurisdiction over this case.

### III.     Unreasonable Delay

Finding jurisdiction, this Court now considers whether, under facts consistent with the Plaintiff's allegations, Defendants' delay in adjudicating their applications is "unreasonable." "In determining reasonableness [for purposes of § 555(b) of the APA], we look to the source of delay – e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Yu*, 36 F. Supp. 2d at 935.

Here, the Plaintiffs timely applied for adjustment of status and followed all requested instructions. Although the Nebraska Service Center is adjudicating Form I-485 applications based on asylum grants that were filed on or before August 8, 2003, Bilal

and Yamen's applications remain pending after six years (filed in 2000), and Zahi's application remains pending after four years (filed in 2002).

The delay in adjudicating the Plaintiffs' applications is partially attributable to Defendants. Defendants' attempt to place blame solely on the FBI is unpersuasive. The record reflects that the delay of the adjudications largely stems from the USCIS's untimeliness in its initial requests to the FBI. Specifically, (1) Bilal filed his Form I-485 application in January 2000, but the USCIS did not request the FBI to conduct a name check until three years later; (2) Yamen filed his Form I-485 in October 2000, but the USCIS did not request the FBI to conduct a name check on him until two years later (and, a second name check request was given to the FBI six years after the initial Form I-485 was filed); and (3) Zahi filed his Form I-485 application in February 2002, but the USCIS did not request the FBI to conduct a name check on him until more than a year later.

While FBI background checks are important and may sometimes require extensive amounts of time, the FBI's delay here does not negate the USCIS's duty to process the Plaintiffs' applications in a reasonable time, both upfront when receiving the forms from the applicants, and later when receiving the requested information from the FBI. As to the latter, the record reflects through the letter from Senator Dayton's office, that at least as to Bilal, the name-check process with the FBI is finished. Defendants have been unable to explain why, at a minimum, Bilal's application has not been adjudicated.

"[T]he [US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA." *Kim*, 340 F. Supp. at 393. Therefore, the Court holds that,

under the particular facts of this case, the delay that the Plaintiffs have experienced is unreasonable. *See Aboushaban*, 2006 WL 3041086, at *2 (holding that an application pending for nearly a decade was an unreasonable delay); *Paunescu*, 76 F. Supp. 2d at 901-02 (holding a ten-month delay unreasonable); *Yu*, 36 F. Supp. 2d at 932 (holding a two-and-a-half year delay unreasonable); *Agbemaple v. INS*, No. 97 C 8547, 1998 WL 292441, at *2 (N.D. Ill. May 18, 1998) (finding dismissal inappropriate because a 20-month delay could be found to be unreasonable and holding as a matter of law that plaintiff "is entitled to a decision within a reasonable time, and that it is within the power of the court to order such an adjudication").

A writ of mandamus confers upon the Court the power to compel the Defendants to perform the duty they owe Plaintiffs. Therefore, the Court orders the USCIS to adjudicate the Plaintiffs' applications expeditiously.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. The Defendants' Motion to Dismiss (Doc. No. 8) is **DENIED and REMANDED** to USCIS. The USCIS is ordered to complete its adjudication of Plaintiffs' I-485 applications within 30 days.[7] Upon completion of the adjudications, the USCIS shall promptly inform this Court and the Plaintiffs of its decisions. This Court will retain jurisdiction over the matter in the interim to ensure that the USCIS complies with this order.

---

[7] The 30-day time limitation shall be calculated from December 1, 2006, which is the date the Court issued its Order in this matter.

13

  2. The Plaintiffs' Motion for Default Judgment (Doc. No. 3) is

**WITHDRAWN.**


Dated:  December 8, 2006     s/Donovan W. Frank
                DONOVAN W. FRANK
                Judge of United States District Court